# Elgin National Bank, Appellee, v. Frank A. Goecke et al. William Mair and A. T. Rogers, Appellants.

## Gen. No. 6,648.

1. BILLS AND NOTES, § 331*—*what not defense available to accommodation indorser.* Under sections 29, 63, 64, Negotiable Instruments Act (J. & A. ¶¶ 7668, 7702, 7703), defining the rights and liabilities of accommodation indorsers, lack of consideration for the indorsement is no defense even against a purchaser after maturity with notice.

2. BILLS AND NOTES, § 251*—*when defense that notes were to be used for specific purpose not available against purchaser after maturity.* Under sections 29, 63, 64, Negotiable Instruments Act (J. & A. ¶¶ 7668, 7702, 7703), defining the rights and liabilities of accommodation indorsers, the defense that the notes were to be used for a specific purpose is not available as against a purchaser after maturity without showing that he had notice of such purpose.

3. BILLS AND NOTES, § 240*—*when bank bona fide purchaser as to accommodation indorsers.* A bank taking a corporation's note with accommodation indorsers at the time of, and as security for, the renewal of an earlier personal note given for money loaned the corporation, is a bona fide purchaser as to the accommodation indorsers.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

4. BILLS AND NOTES, § 307*—*when renewal of principal note does not discharge collateral.* A bank taking a corporation's note with accommodation indorsers at the time of, and as security for, the renewal of an earlier personal note may enforce the collateral note against accommodation indorsers, notwithstanding several subsequent renewals of the principal note.

5. CONTRIBUTION, § 1*—*necessity of accommodation indorsers paying judgment as basis for obtaining.* Accommodation indorsers on a promissory note given as security for another earlier note are not entitled to the earlier note or to enforce contribution on being sued until they have paid the judgment.

6. BILLS AND NOTES, § 298*—*when notes properly canceled upon taking new note.* A bank having purchased several promissory notes by a corporation and received payment from the corporation through the delivery of one new promissory note for the aggregate amount with accommodation indorsers, is under no duty to refrain from canceling and to preserve the old notes for the benefit of the accommodation indorsers.

Appeal from the Circuit Court of Kane county; the Hon. MAZ-ZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed February 8, 1919.

MURPHY & LYON, for appellants.

R. S. EGAN, JOHN M. RAYMOND and JOHN K. NEW-HALL, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Elgin National Bank, hereafter called the bank, sued Frank A. Goecke, William Mair, A. T. Rogers, Franz Walther and the Elgin National Brewing Company, hereafter called the brewing company, in assumpsit. The defendants were all served. Thereafter the suit was dismissed as to the brewing company. The original declaration and the amended counts were only against the four persons named as defendants, yet the clerk retained the brewing company's name in the title of the cause in the court proceedings. Mair and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Rogers filed seven pleas. The first was nonassumpsit, and issue was joined thereon. Plaintiff demurred to the remaining six pleas, and this record does not show that said demurrer was ever acted on. The parties waived a jury and went to trial by agreement with the issues in that condition. As the trial was without a jury, the court permitted defendants to put in evidence some matters which were not competent, without ruling upon objections thereto, and afterwards disregarded such testimony in the decision. There was a judgment for the plaintiff for the full amount claimed, and it was against each of the defendants by name, including the brewing company, which was not named in the declaration, and which had been dismissed. Mair and Rogers appealed. According to the record, the appeal was granted by and allowed to all five defendants, but according to the bill of exceptions, it was prayed by and granted to Mair and Rogers alone. These imperfections are not relied upon by counsel for either party and we therefore pass them by.

The case stated in the declaration is upon two promissory notes executed by the brewing company, the first dated September 30, 1912, for $3,000, with interest at 7 per cent per annum, payable to the order of "Ourselves" and by said brewing company indorsed upon the back, and also indorsed by said four persons named as defendants, and alleged to have been delivered to the plaintiff for value received, and the second note, bearing date October 30, 1912, for $2,500, payable to the order of itself on demand, with interest at 7 per cent per annum, and indorsed by said brewing company and by said four individuals, and alleged to have been given to plaintiff for value received. Each of said four persons named as defendants were accommodation indorsers. The liability of Mair and Rogers as accommodation indorsers on these notes is the litigated question, and sections 29, 63 and 64 of the Negotiable Instruments Act (J. & A. ¶¶ 7668, 7702, 7703),

are important. They are as follows:

"Section 29. An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party, and in case a transfer after maturity was intended by the accommodating party, notwithstanding such holder acquired title after maturity."

"Section 63. A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicated by appropriate words his intention to be bound in some other capacity."

"Section 64. Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

"1. If the instrument is a bill or note, payable to the order of a third person or an accepted bill, payable to the order of the drawer, he is liable to the payee and to all subsequent parties.

"2. If the instrument is a note, or unaccepted bill payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

The accommodation indorsers were each interested in the brewing company. Some of them were officers and others stockholders only. Mair and Rogers each had stock as collateral security for a loan each had made to the brewing company. Though their interest was slight, they each had a pecuniary interest in the company. They received no direct consideration for indorsing these notes, and they seem to contend that for that reason they are not liable to the bank thereon. That contention is answered by the provisions of the

statute above quoted, and also by *Naef v. Potter,* 226 Ill. 628, where it is said that the nature of accommodation paper presupposes that no consideration was given for it, and if the accommodation indorser could defeat the note because he received no consideration, that would eliminate accommodation paper from commercial transactions, and that under the law in this State the transferee of accommodation paper, even after maturity and with notice that it is accommodation paper, takes it discharged of all defenses that might have existed against the accommodated party.

Appellants were permitted to prove, over objection without ruling, that when they indorsed these notes it was with the understanding that they were to be used in paying certain other debts of the brewing company, and in payment for certain merchandise which had been shipped to it with a draft for the purchase price attached to the bill of lading, and that if the indorsers had known that said notes were to be used in a different way they would not have indorsed them. It is not claimed that the bank had any notice of said special purposes for which the paper was issued. Under the statute above quoted the accommodation indorsers could have placed a limitation upon their indorsement by writing appropriate words thereon, and so they could have done by the law merchant. As they did not write such restrictions into the instruments, nor bring them to the attention of the bank at or before the time when the paper passed to it, such special purpose does not constitute a defense, even if the bank took the paper when it was past due. *Naef v. Potter, supra.*

The $3,000 note was used at the bank under the following circumstances: In 1911, Goecke, who was then the president of the brewing company, prepared his note for that sum, payable to the bank, and procured on the back thereof the guaranty of Henry Schmidt, and presented the same to the bank and obtained $3,000 in cash thereon. He deposited that money in that or

another bank to the credit of the brewing company, and the money was used by the brewing company in its business. Although the brewing company's name did not appear upon the note, yet as the transaction was purely for its benefit, it obtained renewals of the note from time to time. At the time of one of those renewals the brewing company offered to the bank the $3,000 note here sued on as additional security and the bank accepted it as such. This fact, that the bank took this at the time of a renewal, is testified to by the cashier of the bank, both when called as a witness for plaintiff and afterwards when called as a witness for defendant, though his testimony on that subject is imperfectly given in the abstract. The evidence makes it apparent that the bank required such notes as the Goecke and Schmidt note to be renewed at certain intervals, but that frequently the renewal was not, in fact, effected until some time after the required interval had expired, and was then dated back to the intended time of renewal. The exact time when that particular renewal of the Goecke and Schmidt note was made does not appear, but it was after the execution of the $3,000 note here sued on. Appellants contend that under these circumstances the bank took this $3,000 note without consideration. Appellants contend that it should have been shown that the bank demanded this additional security, and that as it was apparently voluntarily tendered, the bank received it without consideration. It was held in *Zollman v. Jackson Trust & Savings Bank,* 238 Ill. 290, that the party taking such paper as security for a pre-existing debt without any express agreement is deemed a holder for value, free from latent defenses. We are of opinion that the bank was entitled to hold said $3,000 note here sued on as security for the Goecke and Schmidt note. The Goecke and Schmidt note was afterwards renewed again and again but the debt still exists, and this note was collateral security for that debt, notwithstanding the renewal. Appellants con-

tend that the bank should have first proceeded upon the Goecke and Schmidt note, or that the bank should have delivered the Goecke and Schmidt note to the defendants in this suit. We consider each of these positions untenable. The bank has a right to hold all its securities for that debt until the debt is paid. The fact, which was proven, that Schmidt is financially able to pay this debt cannot change the rule. Appellants are not entitled to any relief because of the earlier note until they have paid this judgment on their $3,000 note. It may be that when the present judgment is paid, those who pay it may have some right of contribution against Schmidt, but that cannot be decided in this case, to which Schmidt is not a party. Certainly appellants cannot enforce contribution until they have paid the debt.

The $2,500 note became the property of the bank under the following circumstances: The brewing company had become indebted to various persons in various amounts. The largest of these sums was due to a contractor who had performed work for the brewing company. It gave to each of these persons its promissory note for the amount due. These various creditors sold and assigned these notes to the bank. At a certain time the amounts due upon these notes equaled about $2,500. The brewing company brought said $2,500 note to the bank and delivered it to the bank in payment of its said outstanding notes, five in number, held by the bank, and the bank received said $2,500 note in payment of said outstanding notes, which it had purchased. It thereupon canceled said five notes. There was a matter of about $20 difference between the total amount due from the brewing company on said five notes and the $2,500, and that was settled in cash. Appellants contend that those five notes should not have been canceled, but should have been retained by the bank for the benefit of the accommodation indorsers here sued. We think this position not sound, because the brewing company by means of said $2,500

note was paying its own debts, and not merely furnishing collateral security for them. As the notes were paid by this transaction, they were properly canceled and the accommodation indorsers could have no interest therein. We are therefore of opinion that the accommodation indorsers were not released from their liability on the $2,500 note by reason of the cancellation of said five notes of the brewing company.

The judgment is therefore affirmed.

*Affirmed.*