(No. 19857.—

THE FOREMAN TRUST AND SAVINGS BANK, Exr., Defendant in Error, *vs.* HERMAN COHN *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1930—Rehearing denied Feb. 4, 1931.*

GOLAN & HALL, for plaintiffs in error.

DENEEN, HEALY & LEE, and HAROLD L. FEIGENHOLTZ, (HARRY W. LIPPINCOTT, and DONALD N. SCHAFFER, of counsel,) for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error, the Foreman Trust and Savings Bank, as executor of the estate of Harry Feder, deceased, filed its bill in the circuit court of Cook county against Herman Cohn and Theresa Cohn, his wife, to foreclose a junior trust deed upon certain real estate in Chicago securing notes aggregating $22,000. Cohn and wife filed an answer to the bill, together with a cross-bill. The cause was referred to a master to take the evidence and report his conclusions. The master recommended that the cross-bill be dismissed for want of equity and that a decree of foreclosure be entered as prayed in the original bill. Exceptions to the report were overruled and a decree of foreclosure was entered for $23,768.02, with an order of sale in default of payment. Cohn and wife prayed an appeal to the Appellate Court for the First District, where the decree was affirmed, and the case comes to this court on a writ of *certiorari.*

The bill alleged that Cohn and wife, being indebted in the principal sum of $22,000, for value received, on or about June 3, 1926, executed their promissory notes dated June 3, 1926, nineteen of them being for $400 each and one for $14,400, one note being payable each month, beginning with July 3, 1926; that the notes were payable to Cohn and wife under the name and description of "ourselves;" that afterwards, for value received, Cohn and wife endorsed the notes in blank and delivered them; that notes 1 to 7, inclusive, were paid, that notes 8 to 10 are due and unpaid, and that notes 8 to 20 are now the property of defendant in error; that to secure the payment of the notes Cohn and wife executed a trust deed on certain real estate in Chicago to Louis L. Kahn, as trustee, and that there were two prior trust deeds upon the property. After setting out certain other matters which are not necessary to here recite, the prayer was for a decree of foreclosure and an order of sale in case of default in payment.

Cohn and wife filed under oath their answer to the bill. They admitted the execution of the notes and their endorsement in blank. They neither admitted nor denied that notes 1 to 7 had been paid but alleged that if they were paid they were not paid by Cohn and wife. They admitted the execution of the trust deed and the execution of two prior trust deeds. They alleged that Harry Feder, now deceased, and Samuel J. Hachtman, who is the son-in-law of Cohn and wife, secured from Cohn the trust deed and notes as described in the bill, for which Cohn and wife received no money or any other consideration; that it was represented to Cohn that Feder and Hachtman would use those instruments merely for the purpose of exhibiting the same; that the trust deed was not to be recorded and was to be destroyed within a day or so, and that Hachtman later informed Cohn and wife that it was destroyed; that it was not until after the death of Feder that Cohn and wife knew that the trust deed had been recorded, and then for the first

time demands were made upon them to pay the notes. They denied the indebtedness represented by the trust deed and denied the right of defendant in error to the relief prayed.

In their sworn cross-bill Cohn and wife set up substantially the same facts as alleged in their answer, and prayed that the trust deed be set aside and declared null and void, that they be re-invested with the title to the property, and that the notes and trust deed be surrendered for cancellation.

The evidence shows that Hachtman was a lawyer who dealt in securities. He had an office with Feder and they had some transactions together. He was the son-in-law of Cohn, who was a pawnbroker in Chicago. When Hachtman was about to engage in business and needed credit Cohn became his guarantor at two banks for $50,000. The trust deed in question was acknowledged before Hachtman as a notary public. He procured the execution of the notes and trust deed and they were delivered to him. He testified that he did not give any money or anything of value to Cohn and wife for these instruments; that he told Cohn and wife that the papers were necessary in order to help Feder and incidentally to help himself; that Feder wanted the papers just to exhibit, and they were not to be put on record but were to be returned to Cohn. He testified that when he received the trust deed he turned it over to Feder and did not know what Feder did with it. Some of the notes matured prior to the death of Feder and were paid to Feder by check from Hachtman. Some of them were paid after the death of Feder. About June 3, 1926, Feder loaned to Hachtman various sums of money, which, with commissions, amounted to the exact amount of the notes secured by the trust deed.

In taking the evidence before the master Cohn and wife and Hachtman were permitted to testify to facts which took place prior to the death of Feder. All of this evidence was excluded, but it was later stipulated that the testimony of Hachtman should be considered without objection.

Samuel Wineberg, father-in-law of Feder, testified that after the death of Feder he had a conversation with Cohn in which Cohn said he gave Feder the mortgage and that it was good; that he said: "Don't bother me now about payment; don't worry about the mortgage; it is all right." Frances Buxbaum, a daughter of Wineberg and a sister-in-law of Feder, testified that after the death of Feder, Cohn said to Wineberg: "Don't worry, Mr. Wineberg; everything is going to come out all right; don't worry about my mortgage; mine is absolutely one hundred per cent." Louis C. Coyner, an assistant secretary of the Foreman Trust and Savings Bank, testified that after the death of Feder he had a conversation with Cohn in March, 1927, at the bank, in the presence of Gerhart Foreman; that Cohn said, "You have a mortgage of mine for about $18,000 which is as good as gold." Coyner said, "If it is as good as gold why haven't you paid the last two or three notes that are past due?" Cohn replied, "They are going to be paid, all right."

It is insisted by plaintiffs in error that there is a fatal variance between the allegations of the bill, the proof and the decree with reference to whether the notes were accommodation paper; that in the Appellate Court defendant in error for the first time sought to support the decree on the ground that the notes were accommodation paper, which contention was adopted by the Appellate Court but was inconsistent with the finding of that court that the notes and trust deed were turned over to Feder by Hachtman as collateral for or in payment of a pre-existing indebtedness; that there is no allegation in the bill that the instruments are accommodation paper, but it is alleged that there was an indebtedness due at the time of making the notes and a later negotiation thereafter for value; that to permit defendant in error to allege the existence of a prior indebtedness and a later negotiation for value, and to prove an indebtedness by reason of a transfer to a third person, would be to sub-

vert the purpose of the pleadings by permitting litigants to be misled; and this is particularly so in this case, because there was nothing in the record, until it reached the Appellate Court, to indicate that either master or chancellor ever believed that the legal principles pertaining to accommodation paper had anything to do with the case; that there is no finding in the decree that the notes were accommodation paper but the decree merely finds that the allegations in the bill are true, and that if the notes had a consideration for their support then the decree is erroneous because it is affirmed by the Appellate Court on the ground that the notes are accommodation paper, and therefore an exception to the rule that the purchaser is in equity a mere assignee.

Section 29 of the Negotiable Instruments act provides as follows: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity."

In *Olds* v. *Cummings,* 31 Ill. 188, it was held that in equity an assignee of a mortgage or trust deed is subject to any defenses which the mortgagor or grantor might have as against the assignor. In *Peoria and Springfield Railroad Co.* v. *Thompson,* 103 Ill. 187, in discussing the rule announced in the *Cummings case,* this court said: "The rule in that case rests, at least in part, on technical grounds, which have lost much of their force in more recent times by reason of the manifest tendency of judicial thought to an equitable standard, and while it is not intended to question the authority of that case, yet for the reasons suggested we do not think the principle should be extended to cases

that are not clearly shown to be within the rule there announced."

*Miller* v. *Larned,* 103 Ill. 562, is a leading case in this State upon the question of accommodation paper. On page 580 it was said: "It would be most unreasonable to affirm the grantor in a mortgage to secure accommodation paper has any equity superior to those of the assignee of the note, who thereby becomes the equitable assignee of the mortgage. Any application of the doctrine of *Olds* v. *Cummings* to the maker of a mortgage to secure accommodation paper would be to make a most equitable and reasonable doctrine the means of enabling a party to perpetrate a great wrong on another. A court of equity will not lend its aid for any such purpose. Of course, the party accommodated could never recover the amount of the bill or note from the maker, but the settled law is, wherever the common law prevails, to accommodation paper in the hands of one who has taken it in good faith in the usual course of business for value the maker can make no defense. * * * To allow the equities existing between the original parties to accommodation paper secured by mortgage to prevail over the equities of the assignee of the note would be to carry the doctrine of *Olds* v. *Cummings* to such an unreasonable extent as would ensnare honest dealers in such securities."

In *Naef* v. *Potter,* 226 Ill. 628, it was held that a transferee of accommodation paper in good faith and for value, even after maturity and with notice that it is accommodation paper, is entitled to recover, notwithstanding it has been diverted from its purpose, where there are no restrictions as to its use written into the paper and no notice of such restrictions brought to the knowledge of the transferee; that such accommodation paper must be made without legal consideration and the maker may impose such restrictions upon it as he desires, but unless such restrictions are written into the paper or otherwise brought to the knowledge

of the transferee for value before he has received the paper, the fact that the paper was past due and that there were verbal restrictions as to its use constitutes no defense to the paper or the foreclosure of the mortgage securing it. To the same effect is *Keenan* v. *Blue,* 240 Ill. 177, where it was held that fraudulent representations going only to reasons prompting the maker of accommodation paper to lend credit are no defense to its collection.

There is no variance between the allegations of the bill, the evidence and the decree. All that defendant in error was required to allege in its bill was such facts as entitled it, under the law, to a decree of foreclosure. It is not contended that the facts alleged, if true, did not entitle defendant in error to a decree. Defendant in error was not required to allege that the trust deed and notes were accommodation paper. If the evidence shows that it was entitled to a decree upon any theory of law, as alleged in its bill, it cannot be successfully claimed that there is a variance between the bill and the evidence and the decree based thereon. When defendant in error introduced in evidence before the master the trust deed, notes and the other preliminary proofs, such evidence made a *prima facie* case sufficient to entitle it to a decree of foreclosure. The burden of proof was then upon plaintiffs in error to prove the defense set up in their answer or to prove the allegations of their cross-bill by clear and convincing evidence. (*Boudinot* v. *Winter,* 190 Ill. 394.) The validity of the trust deed did not depend upon who was primarily liable. There was no consideration or liability between Cohn and wife and Hachtman, but the moment Cohn and wife signed the instruments and delivered them to Hachtman a liability arose between Cohn and wife on the one hand and any third party by whom the notes were taken in good faith in the usual course of business for value. As to such third party, Cohn and wife, by executing the instruments, recognized their liability and agreed to pay the indebtedness which might afterwards

accrue to such third party. In their sworn answer and cross-bill they alleged that they executed the notes and trust deed so that they could be exhibited by Hachtman and Feder. In other words, they executed them for the accommodation of these parties, and therefore this paper was subject to all of the rules of law applicable to accommodation paper. The evidence shows that Feder owned the trust deed and notes at the time of his death. They were taken by him in good faith in the usual course of business for value, and therefore he was the owner thereof and Cohn and wife had no defense. The principal argument of plaintiffs in error as to a variance is based upon certain statements in *Burr* v. *Beckler,* 264 Ill. 230. While there is some language in that case which might indicate a variance, the case was decided upon the ground that the note in question was executed by a married woman in a State in which such notes were invalid. It was also sought in that case to reverse the judgment on a theory different from the one presented to the trial court, and it was held that such a contention could not be maintained. The most of the evidence in this case which tends to establish the defenses of Cohn and wife is from Hachtman. His testimony is contradictory in many respects and was not sufficient to overcome the *prima facie* case made by defendant in error, and there was no variance between the bill, proof and decree sufficient to reverse the decree.

Plaintiffs in error are precluded from claiming in this court that the instruments in question were not accommodation paper. On page 18 of their brief filed in this court they say that the master did not find that the notes were accommodation paper but expressly found that each and all of the allegations of the bill had been proven. On page 22 of their Appellate Court brief, a certified copy of which has been filed in this court, plaintiffs in error say that the finding of the master, upon which the decree is based that the notes of Cohn were accommodation paper,

establishes the fact that there was no consideration for the notes and mortgage. On page 26 of their Appellate Court brief, after discussing the findings of the master that the trust deed and notes were accommodation paper, plaintiffs in error say: "That these notes were without consideration and were at most accommodation paper is more definitely established now than at the time the master heard the case." It is apparent from these various statements in the brief that plaintiffs in error, both in the trial court and the Appellate Court, insisted that these documents were accommodation paper, and they will not be permitted to shift their position in this court and assert that they were not delivered as such. *Buck* v. *Rosenthal,* 273 Ill. 184; *Olcese* v. *Mobile Fruit Co.* 211 id. 539.

We have given careful consideration to the pleadings and proof in this case and are convinced that the notes and trust deed were accommodation paper; that they were executed without consideration and without limitation by Cohn and wife to Hachtman for his sole use and benefit and in order to aid him financially in his business; that Hachtman delivered the instruments to Feder for value; that Feder was guilty of no fraud in securing the execution of the instruments or in their transfer; that Hachtman paid to Feder some of the notes after they became due and some payments were made after Feder's death; that Cohn and wife knew the exact nature of this transaction and no fraud was practiced upon them, and that after Feder's death Cohn said that the trust deed was good and that the notes would be paid.

We find no reversible error, and the judgment will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*