(No. 24420.—

ARNOLD K. MARKS, Trustee, *et al.* Appellants, *vs.* NICHOLAS A. POPE *et al.* Appellees.

*Opinion filed February 15, 1939.*

ORR, J., dissenting.

ROSENBERG, TOOMIN & STEIN, and PHILIP A. WEINSTEIN, for appellants.

ARNOLD D. MCMAHON, and RICHARD E. DOOLEY, for appellees.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

On October 8, 1925, Nicholas Pope and Marie R. Pope, his wife, executed a trust deed to Arnold K. Marks, as trustee, on certain property located in Cook county to secure the payment of fifty-eight bonds, totaling $40,000. The

bonds were payable to bearer, bore seven per cent interest, payable semi-annually at the office of Marks & Company, and were turned over to that company which sold all but four of them. A commission of $4000 was paid to Marks & Company by the Popes for handling the transaction. Thirty-six of the bonds, with interest thereon, have been paid in full and the certificates surrendered and cancelled. The remaining bonds, aggregating $22,000, upon which all interest has been paid, matured October 10, 1932, but have not been paid. The trustee filed a bill to foreclose the trust deed in the superior court of Cook county on January 31, 1933, to which the Popes filed an answer alleging usury. Eva Browarsky was permitted to intervene, alleging herself to be a *bona fide* owner of $21,000 worth of the bonds secured by the trust deed. She filed a short answer claiming the protection of the trust deed, admitting the allegations of the bill and asking that the trustee be given the relief prayed for. After reference to a master, the chancellor found that the defense of usury had been proved, but that it could not be asserted against holders in due course. On appeal, the Appellate Court reversed this ruling of the chancellor and held that usury could be so asserted as a defense. (289 Ill. App. 558.) The cause is before us by appeal on leave granted.

Issue is first raised concerning the jurisdiction of the Appellate Court to review the decree of the superior court, plaintiffs contending that the appeal was prematurely taken. The decree of foreclosure was entered November 1, 1935, and on November 5, 1935, defendants filed a motion to vacate the decree which motion was continued on November 15, to November 19. After the continuance was granted, on November 15, and four days prior to the date set for argument on the motion to vacate, defendants filed their notice of appeal. On November 19, the court overruled defendants' motion to vacate the decree of November 1. While it is true that appeals lie only from final decrees (Ill. Rev.

Stat. 1937, chap. 110, par. 201) and the effect of a motion to vacate a decree is to stay its execution pending disposition of the motion (*Brocket* v. *Brocket,* 2 How. 240) we have held that by praying an appeal, an appellant abandons his motion to vacate and the decree thereupon becomes final. *McCoy* v. *Acme Automatic Printing Co.* 278 Ill. 276.

Section 59 of the Uniform Negotiable Instruments act provides that every holder is deemed *prima facie* to be a holder in due course (Ill. Rev. Stat. 1937, chap. 98, par. 79) and, since there is nothing in the record to the contrary, Eva Browarsky must be so considered. The question for decision, therefore, is whether the individual maker of a series of bonds which are payable to bearer, so as to be negotiable without endorsement, may interpose the defense of usury as against a holder in due course, when the trustee brings an action to foreclose the trust deed for the benefit of all bondholders. It is stated in Corpus Juris that, by the weight of authority, the *bona fide* purchaser, in due course, of a negotiable instrument, takes the mortgage securing it free from all equities and defenses which the mortgagor could have set up against the mortgagee, but that, in some jurisdictions, the rule is otherwise, citing some of the Illinois cases hereafter to be noticed. In the note to this text it is pointed out "it should be noticed that the courts of Illinois have often shown uneasiness and dissatisfaction under the rule as thus established in the leading case of *Olds* v. *Cummings,* 31 Ill. 188, and while not venturing to overrule it, have sought occasion to restrict rather than to extend it." An examination of the cases on this point seems to justify the text and the note in Corpus Juris, (41 Corpus Juris, 693, 694,) and since the present case squarely presents the problem we find it advisable to review the former holdings of this court that they may be harmonized to the greatest possible extent and the rule clarified, so far as the facts before us will permit our passing on the matter.

*Olds* v. *Cummings, supra,* was a bill to foreclose a mortgage brought by an assignee of that mortgage who, for the purposes of the opinion, was assumed to be a *bona fide* holder. The defense in that case, as in this one, was usury, and it was held that the defense was available notwithstanding the *bona fides* of the complainant. This decision, which was made in 1863, is put upon the ground that the mortgage was not assignable and that, in equity, it passed only as an incident to the debt. The opinion states: "He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor; and the reason is, that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just of itself. We have not met with a single case, where remedy has been sought in a court of chancery, upon a mortgage, by an assignee, in which every defense has not been allowed which the mortgagor or his representatives could have made against the mortgagee himself, * * * and the reason is, that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid," etc. The opinion refers to *Murry* v. *Sylburn,* 2 J. C. R. 441, wherein Chancellor Kent asserted that bonds and mortgages were not the subjects of ordinary commerce. The opinion then continues: "Here is expressed the very essence of the reason of the law. Mortgages are not commercial paper. It is not convenient to pass them, from hand to hand, performing the real office of money in commercial transactions, as notes, bills and the like. When one takes an obligation secured by a mortgage, relying upon the mortgage as the security, he must do it deliberately, and take time to inquire if any reason exists why it should not be enforced; while he may take the mere promise to pay the money as commercial paper, and depend upon the personal security of the parties to it.

It may be said to be a distinguishing characteristic of commercial paper, that it relies upon personal security, and is based upon personal credit. It is a part of the credit system, which is said to be the life of commerce, which requires commercial instruments to pass rapidly from hand to hand. Mortgage securities are too cumbersome to answer these ends."

A reading of this opinion makes it apparent that it was dealing with the neighborhood finance of pioneer days and that it has no semblance of any bearing upon such problems as are presented in the financing of extensive enterprises where the lenders, of necessity, must be numerous and widely scattered. Indeed the first such case in our court which has been called to our attention seems to have arisen with the coming of the railroads, and in that case we hastened to modify the rule laid down in *Olds* v. *Cummings, supra.*

*Peoria and Springfield Railroad Co.* v. *Thompson,* 103 Ill. 187, involved the rights of innocent holders of railroad bonds as to which there existed a good defense as between the original parties. We held that the doctrine of *Olds* v. *Cummings* had no application to deeds of trust intended to secure such bonds which would be thrown upon the market and circulated as commercial paper. The opinion (referring to the *Olds* v. *Cummings case*) in part, says: "The rule in that case rests, at least in part, on technical grounds, which have lost much of their force in more recent times by reason of the manifest tendency of judicial thought to an equitable standard, and while it is not intended to question the authority of that case, yet, for the reasons suggested, we do not think the principle should be extended to cases that are not clearly shown to be within the rule there announced. In the case of an ordinary mortgage or deed of trust to secure a temporary loan from one individual to another, the note or evidence of the indebtedness taken at the time, although it may be negotiable, is not given for

the express purpose of being put upon the market and used as a permanent investment of capital, as in the case of railroad securities, nor does the mortgagee in such case, as a general rule, rely wholly on the security which the mortgage affords, as is always done in the case of railroad mortgage bonds. In ordinary cases of the kind suggested, the mortgage is uniformly made for the benefit of some one specifically mentioned, (usually the payee of the note,) and the legal interest in such note is by operation of law vested in him, and can only be transferred to another by his indorsement, and the mortgage passes in equity, as an incident of the debt, by virtue of such indorsement. The case before us is unlike the ordinary one suggested, in several essential particulars. The bonds in question are not payable to Thompson, Griggs & Co., nor is the trust deed, so far as anything appears on the face of it, made to them or for their benefit. Indeed, they are not so much as mentioned either in the bonds or the trust deed. On the contrary, the bonds are in express terms made payable to 'the holder' of the bonds, and the deed of trust is expressly declared to be 'for the benefit, protection and security of the persons or corporation who shall hold the bonds about to be assured,' etc. Thus it clearly appears that, so far as the record shows, Thompson, Griggs & Co. were total strangers to the transaction, and upon what principle any equities the company may have against them can be interposed so as to defeat the title of the present holders, is not perceived. It clearly can not be done. In short, we hold the doctrine of *Olds* v. *Cummings* has no application to deeds of trust given to secure railroad coupon bonds intended to be thrown upon the market and circulated as commercial paper, and to be used as securities for permanent investments. To hold otherwise would be doing violence to the manifest intention of the parties to such instruments, and would unquestionably lead to very disastrous consequences. It is true that a part of the reasoning by

which our conclusion upon this question is reached in the present case, applies to some of the cases following *Olds* v. *Cummings,* but a review of those cases will clearly show that the present case may be distinguished from all of them in this, that both the deed of trust and the bonds, as we have already seen, show expressly upon their face that they were executed for the benefit of the holders of the bonds, whoever they might be."

In the same year, but at a subsequent term of court, these general principles were reaffirmed. (*McIntire* v. *Yates,* 104 Ill. 491.) A few years later, in 1884, in *Towner* v. *McClelland,* 110 Ill. 542, without reference to the two cases last above cited, and apparently without any consideration of them, the doctrine of the *Olds* v. *Cummings case* was reaffirmed, being applied, however, to an individual mortgage. The same may be said of *Shippen* v. *Whittier,* 117 Ill. 282, decided in 1886, although this case involved a sale under a power in a trust deed and, like the *McIntire* and *Towner cases,* concerned a single debt between two individuals. To the same effect see *Hazle* v. *Bondy,* 173 Ill. 302.

In *Naef* v. *Potter,* 226 Ill. 628, it is held that accommodation paper in the hands of an innocent purchaser for value is valid, and that a mortgage securing it is not subject to the defense of want of consideration. Other subsequent cases have held the same, although there could have been no recovery between the original parties and a strict literal application of the rule in the *Olds* v. *Cummings case* would seem to bar this kind of a foreclosure. The cases of *Bartholf* v. *Bensley,* 234 Ill. 336, *Pittsburg Plate Glass Co.* v. *Kransz,* 291 id. 84, and *Hirsh* v. *Arnold,* 318 id. 28, reaffirm the rule in the *Olds* v. *Cummings case* as applied to individual mortgage transactions, while in *Peacock* v. *Phillips,* 247 Ill. 467, the distinction between individual loans and bond issues is again pointed out, citing *Peoria and Springfield Railroad Co.* v. *Thompson, supra.* *Foreman Trust and Savings Bank* v. *Cohn,* 342 Ill. 280, appears

to be the latest case to come before us, involving accommodation paper secured by trust deed. In that case *Olds* v. *Cummings* is again distinguished and we again held we could not allow the equities between the original parties to go to such an unreasonable extent as to ensnare honest dealers in such securities, which would be the result of extending the rule in the *Olds* v. *Cummings case.*

This short review of the Illinois cases shows that as recently as 1925, in the *Hirsh case,* the doctrine of *Olds* v. *Cummings* has been applied to individual mortgage transactions, while as long ago as 1882 it was sharply criticised as being based upon technical grounds and excluded from any application to bonds intended to be thrown upon the market as commercial paper. As we said in that case, the rule should not be extended to cases not clearly shown to be within its reason. Inasmuch as the reasons for the decision in the *Olds* v. *Cummings case* do not exist in cases of a bond issue secured by a trust deed and intended to be sold on the open market, the rule does not apply.

The reason given for that rule was because the mortgage was not assignable, but passed only as an incident to the debt, and then only in equity. Trust deeds in those days were not enforced either at law or in equity, but were arbitrarily enforced by the trustee executing a power of sale. It was not until 1879 that trust deeds were required to be foreclosed in equity. (Laws of 1879, p. 211.) At the time of the decision in the *Olds* v. *Cummings case* trust deeds, as we now know them, were not in existence, and the modern age of corporate and large individual financing had not yet begun. What was said about a small mortgage given by Cummings to his neighbor Kelsey, in 1857, should not be permitted, at this time, either to be made an instrument of fraud whereby widely scattered innocent purchasers may be defrauded of their interest, nor a paralyzing restraint upon the modern financing of large hotels, apartments and other properties.

In the record before us it appears that the defendant Pope authorized Marks & Company to negotiate a mortgage loan of $40,000 to be divided into 58 bonds of different denominations and maturities. The bonds were payable to bearer and were clearly intended to be thrown upon the market and circulated among innocent holders. The case comes clearly within *Peoria and Springfield Railroad Co.* v. *Thompson, supra,* and is not controlled by *Olds* v. *Cummings, supra,* as subsequently modified. To hold otherwise, would be to create a trap for innocent and unwary investors and perhaps spring thousands of such traps already in existence. There is no evidence of any fraudulent intent on the part of the defendant, and yet the rule contended for by him would readily lend itself to such a scheme, should one less scrupulous devise it. The facts in the present case illustrate how this might be done. The defendant Pope is a lawyer of many years practice and the briefs indicate that he is familiar with the *Olds* v. *Cummings case.* Nevertheless, he made a usurious contract with his loan broker and issued bearer bonds, which were adapted to circulate anywhere in the world and among innocent persons. If we were to sustain his contentions it would follow that his plan was perfectly devised to prevent his ever having to pay any interest at all. Equity, reason and justice should prevent such a possibility. If the defendant Pope made a usurious contract, he should be the one to suffer from the instrumentality of his own creation, rather than innocent persons.

The decree of the superior court was right and the Appellate Court erred in reversing it. The judgment of the Appellate Court is reversed, and the decree of the superior court is affirmed.

> *Judgment of Appellate Court reversed.*
> *Decree of superior court affirmed.*

Mr. JUSTICE ORR, dissenting.