**D'OENCH, DUHME & CO., Inc., v. FEDER-
AL DEPOSIT INS. CORPORATION.**

No. 11779.

Circuit Court of Appeals, Eighth Circuit.

Feb. 11, 1941.

Rehearing Denied March 27, 1941.

John W. Giesecke and Harold C. Ackert,
both of St. Louis, Mo., for appellant.

492

Chester H. Farthing, of Belleville, Ill., and Wm. O'Herin and Leahy, Walther & Hecker, all of St. Louis, Mo., for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Two questions are determinative of this appeal: (1) Whether the promissory note involved is governed by the law of Illinois or of Missouri; and (2) whether, under the law of the applicable state, the indorsee of a demand note, given for the accommodation of the payee and negotiated more than five years after its execution, may have the status of a holder in due course.

Plaintiff (appellee) has a corporate existence under 12 U.S.C.A. § 264, Act of June 16, 1933, c. 89, § 8, as amended. Defendant (appellant) is a Missouri corporation.

The action was one upon a promissory note, which defendant had executed as maker, in favor of Belleville Bank & Trust Co., as payee, and of which plaintiff claimed to be a holder in due course. The instrument was in the face amount of $5,000, was dated Belleville, Illinois, January 1, 1933, and was payable on demand, with interest semiannually, at the office of the payee, in Belleville, Illinois. It was indorsed by the payee to plaintiff, at Belleville, Illinois, on April 4, 1938, as collateral, with other assets, for a loan made by plaintiff, under 12 U.S.C.A. § 264 (n) (4), to facilitate a transfer of the deposit liabilities of Belleville Bank & Trust Co. and their assumption by another bank. By the terms of the loan transaction, plaintiff was authorized to make collection of the collateral in its own name, on any default in the payment of the principal obligation.

After such a default by Belleville Bank & Trust Co., plaintiff made demand upon defendant for payment of its note, and then instituted this action. Suit was brought in federal court under the provisions of 12 U.S.C.A. § 264 (j) Fourth, and 28 U.S.C.A. § 42. The case was tried without a jury. The trial court held that the note was governed by the law of Illinois, and that, under the law of that state, plaintiff had the status of a holder in due course. Judgment was rendered in favor of plaintiff, and defendant has appealed.

From the evidence, it appeared that defendant was a dealer in securities, and that Belleville Bank & Trust Co. had been one of its customers. In 1926, some Arkansas and Mississippi drainage district bonds, which defendant had sold the bank, went into default, and, to prevent their showing as delinquent assets on its records, the cashier requested defendant, as an accommodation, to execute two demand notes in favor of the bank, in an amount equal to the face of the bonds, to which the securities were to be carried as purported collateral. The bank gave defendant receipts for the notes, which recited, "This note is given with the understanding it will not be called for payment. All interest payments to be repaid." Subsequent renewals of the notes were executed. Defendant made interest payments to the bank until 1932, which were retained by the bank, though it appears that some years later and before the note here involved was negotiated, defendant requested· that these sums be returned. The original notes were executed at St. Louis and contained a recital that they were negotiable and payable at the office of defendant in that city. The contents of the intermediate renewal notes are not shown. The note here involved consolidated the amounts of the original notes and, as previously indicated, was dated Belleville, Illinois, and was made payable at the office of the Belleville Bank & Trust Co. in that city. Since 1935, the bank had carried the note as a charged-off asset.

Defendant contends that the original notes were Missouri contracts, and that all renewals should therefore be held to be governed by the law of that state. But an accommodation note, like any written instrument, is subject to competent modification. And where, on a renewal of accommodation paper, its terms and recitations are so changed as to make applicable other or different principles of law, their effect cannot be escaped by mere inferences from the original paper. An instrument that is complete, unambiguous and unimpeached must be governed by its own applicable law.

Where a negotiable instrument is executed and is payable in the same state, and there are no other controlling provisions in it, it elementarily must be held to be governed by the law of that state. A contract is regarded as having been executed where the last act necessary to make it a legal obligation has been and, under the terms of the instrument, was entitled to be done. Hogue-Kellogg Co. v. G. L. Webster Canning Co., 4 Cir., 22 F.2d 384; 1 Williston on Contracts, Rev. Ed., 309, § 97. In the

case of accommodation paper, this is the place where it has been, and where the parties must be held to have intended it could be, negotiated for value to a third person. Tilden v. Blair, 88 U.S. 241, 21 Wall. 241, 22 L.Ed. 632; Gay v. Rainey, 89 Ill. 221, 31 Am.Rep. 76; Restatement Conflict of Laws, § 320; 2 Beale Conflict of Laws 1059, § 320.1; 7 Am.Jur. 808, § 34.

■ Here, the original notes were issued at St. Louis, Missouri, and contained a recital that they were negotiable and payable there. The renewal note involved in this action, however, was dated and made payable at Belleville, Illinois. It contained no provision indicating that it was not intended to be negotiated there. From the face of the instrument, it was properly in the hands of the payee in that state. In this situation, if the instrument was legally subject to negotiation, a transferee necessarily was entitled to assume and claim that the resulting contract between the maker and himself was an Illinois contract and would be governed by the law of that state.

The remaining question then is whether, under the law of Illinois, plaintiff is a holder in due course or has a status equivalent thereto.

Section 52 of the Uniform Negotiable Instruments Law provides that a holder in due course is one who, among other things, has taken the instrument before it was overdue. Section 53 provides that, "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course." Section 29 provides that an accommodation party "is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." These provisions are in force in Illinois (Smith-Hurd Ill.Ann.St. c. 98, §§ 72, 73, 49) under the Negotiable Instruments Law of that state, with a clause added by the legislature to Section 29 providing, "and in case a transfer after maturity was intended by the accommodating party notwithstanding such holder acquired title after maturity."

Defendant contends that five years ought to be held to be an unreasonable time for the negotiation of a demand note, as a matter of law; that it was in any event an unreasonable period under the facts of this case; that plaintiff must therefore be held to have taken the instrument after maturity; and that the paper was accordingly subject to all the defenses existing between the original parties.

■ Whether five years is an unreasonable length of time to negotiate a demand note, or whether it was an unreasonable period under the facts of this case, it is unnecessary to decide. The courts of Illinois appear to have taken the view that, notwithstanding the provisions of the Negotiable Instruments Law and the clause added to section 29 by the Illinois legislature, one to whom accommodation paper is negotiated, in good faith and for value, is in the position of, or equivalent to, a holder in due course, whether he acquires title before or after maturity. This construction necessarily is binding on us.

In the early case of Miller v. Larned, 1882, 103 Ill. 562, the Supreme Court of Illinois declared: "It is a reasonable rule that one who puts his note or bill in the hands of another to be sold or negotiated, after it is done, will not be permitted to answer the holder, who has taken it in good faith for value, that he does not owe the note or bill. The very purpose of making accommodation paper is, that the party favored may dispose of it, and unless restricted he may transfer it either before or after maturity, and the maker will be equally bound."

In Naef v. Potter, 1907, 226 Ill. 628, 80 N. E. 1084, 11 L.R.A., N.S., 1034, the court extended the rule, to protect a holder after maturity where accommodation paper had been diverted from its agreed purpose. It was there held: "A transferee of accommodation paper, in good faith and for value, even after maturity and with notice that it is accommodation paper, is entitled to recover notwithstanding it has been diverted from its purpose, where there are no restrictions as to its use written into the paper and no notice of such restrictions brought to the knowledge of the transferee." The opinion adds: "But it is said appellee accepted the note and trust deed after maturity, and the rule applicable generally to commercial paper is invoked—that the transferee of past-due negotiable paper takes it subject to all defenses that might have been interposed against the original holder. This rule does not apply to accommodation paper. If it did apply to such paper, the effect would be to destroy the value of all accommodation paper when the same is transferred after maturity. * * * But the law in this State * * * is that the transferee of accommodation paper, even after maturity

and with notice that it is accommodation paper, takes it discharged of all defenses that might have existed against the accommodated party."

These two cases were decided before the Negotiable Instruments Law had been adopted and become operative in Illinois. Ordinarily in this situation they would perhaps not have controlling significance; but, even since the Negotiable Instruments Law became effective there in 1907, the courts have recognized these previous decisions as declaring the existing law of the state. Thus, in Elgin National Bank v. Goecke, 1919, 213 Ill.App. 559, it was said: "Under sections 29, 63, 64, Negotiable Instruments Act * * * defining the rights and liabilities of accommodation indorsers, lack of consideration for the indorsement is no defense even against a purchaser after maturity with notice." In that case it was claimed that the notes had been diverted from the restricted use for which they were issued, and, while they seemingly had been negotiated before maturity, the opinion declares: "As they did not write such restrictions into the instruments, nor bring them to the attention of the bank at or before the time when the paper passed to it, such special purpose does not constitute a defense, even if the bank took the paper when it was past due."

Again, in Foreman Trust & Savings Bank v. Cohn, 1930, 342 Ill. 280, 174 N.E. 419, 421, the court after setting out section 29 of the Negotiable Instruments Law in its opinion, with the addition made thereto by the Illinois legislature, that, where a transfer of accommodation paper after maturity was intended, there should be a liability notwithstanding the holder acquired title after maturity, recognized the rule laid down in Naef v. Potter, supra, as follows: "In Naef v. Potter * * * it was held that a transferee of accommodation paper in good faith and for value, even after maturity and with notice that it is accommodation paper, is entitled to recover, notwithstanding it has been diverted from its purpose, where there are no restrictions as to its use written into the paper and no notice of such restrictions brought to the knowledge of the transferee."

In Corrigan v. Harris, 1917, 207 Ill.App. 291, which is not fully reported, the court appears to have applied a different rule, without any reference to Naef v. Potter, supra. In Wilhoit v. Seavall, 121 Kan. 239, 246 P. 1013, 48 A.L.R. 1273, the Supreme Court of Kansas asserts that the rule of Naef v. Potter, supra, ought not to be regarded as the law in Illinois under the Negotiable Instruments Law. But, no matter how illogical or ill-considered it may be contended that the expressions in Elgin National Bank v. Goecke, supra, and Foreman Trust & Savings Bank v. Cohn, supra, are, in their application to the provisions of the Negotiable Instruments Law, they clearly indicate that the courts of Illinois regard the rule in Naef v. Potter, supra, as still the governing law of that state. For the purposes of this case, and until its authorized tribunals declare otherwise, we must accept it as the established law of Illinois that, under its Negotiable Instruments Law, a transferee of accommodation paper in good faith and for value has a status equivalent to that of a holder in due course, whether he takes the paper before or after maturity. It may be added that, while the construction of the Negotiable Instruments Law made by the Illinois courts represents a minority American viewpoint, it has at least some support in other jurisdictions. 8 Am.Jur. 170, § 426; 48 A.L.R. 1280, annotation.

While there is no evidence in the record from which it could be inferred that plaintiff had actual knowledge of the accommodation character of the paper, that question would in any event not be material under the applicable law. No issue has been raised as to the formal sufficiency of the paper as a negotiable instrument, and hence that question also calls for no consideration. The ground of disposition here also makes unnecessary a discussion of defendant's other contentions, except to remark that the mere fact that the paper had been charged off by the bank was not notice of any infirmity in the instrument or defect in the bank's title within the meaning of sections 52(4) and 56 of the Negotiable Instruments Law, Smith-Hurd Stats. Ill. c. 98, § 72, subd. 4, § 76. The charging off of commercial paper by a bank does not necessarily imply an infirmity in the instrument or a defect in the bank's title, and, without other circumstances, is not knowledge of such facts that the transferee's action in taking the instrument amounts to bad faith under the Negotiable Instruments Law.

Affirmed.