(No. 95051.—

KHALID J. BAJWA, Adm'r of the Estate of Muhammad Cheema, a/k/a Manwar Ahmad Bajwa, Deceased, Appellee and Cross-Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant and Cross-Appellee.

*Opinion filed January 23, 2004.*

416

FITZGERALD, J., took no part.

Chittenden, Murday & Novotny, L.L.C. (Joseph J. Hasman and David F. Schmidt, of counsel), Lawrence X. Pusateri, and Peterson & Ross, L.L.C. (Anna M. Loftus, of counsel), all of Chicago, for appellant and cross-appellee.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, Philip H. Corboy, Jr., and Francis Patrick Murphy, of counsel), for appellee and cross-appellant.

JUSTICE THOMAS delivered the opinion of the court:

Plaintiff, Khalid J. Bajwa, as administrator of the estate of Muhammad Cheema, filed an action under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1998)), alleging that the negligent issuance of a life insurance policy by defendant, Metropolitan Life Insurance Com-

pany (Met Life), proximately caused the murder of Muhammad Cheema (decedent or A. Cheema) by the beneficiary of the policy. Met Life filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 2000)). The circuit court of Cook County granted the motion. The appellate court reversed and remanded the cause for further proceedings. 333 Ill. App. 3d 558. We granted Met Life's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), to consider an issue of first impression in Illinois: whether a cause of action for negligent issuance of a life insurance policy should be recognized, where there are a number of anomalies in the application process and plaintiff alleges that the insurer should have known that the supposed insured did not know of the policy and did not give his consent to it, thereby proximately causing the death of the insured.

## BACKGROUND

The plaintiff's fourth amended complaint and the attached exhibits reveal that in December 1992, Muhammad U. Cheema (U. Cheema) met with Met Life account representative Imtiaz Sheik to fill out an insurance policy on the life of A. Cheema. U. Cheema falsely represented himself as the son of A. Cheema and provided some personal information necessary to fill out part A of the application. U. Cheema designated himself as the beneficiary and arranged for the policy premiums to be deducted from his own bank account. U. Cheema then told the agent that he would take the application to his "father" to obtain his signature. This was a violation of Met Life's standard procedural rules, requiring that the agent meet personally with the proposed insured to witness the signature on the application and to propound certain questions to the proposed insured. Nevertheless, Sheik agreed to this deviation from procedure, and U.

Cheema returned the application with it signed "A. Cheema." Agent Sheik then signed part A of the application, under the heading "Witness," indicating that he had personally witnessed the proposed insured sign the application. When the policy was contested following the decedent's death, Sheik admitted that he had not witnessed the proposed insured's signature.

For part B of Met Life's application process, the proposed insured was required to submit to a medical examination conducted by a paramedical examiner hired by Met Life. The medical exam resulted in a number of discrepancies between part A and part B of the application: the proposed insured's mailing address was listed as 6400 N. Ridge, #305, Chicago, IL in part A, but the address of his residence was listed as 5101 N. Slunden, Chicago, IL in part B; the social security numbers listed for the proposed insured in part A and part B were not the same; and the spaces provided for disclosing previous treatment for high blood pressure and previous surgery were checked "no" in part A, but were checked "yes" in part B.

The paramedical examiner certified in part C of the application that he had personally examined A. Cheema. However, the person examined by the paramedical examiner was 5 feet 11 inches tall and 195 pounds, while decedent was actually 5 feet 8 inches tall and 213 pounds.

Prior to the issuance of the policy, a Met Life underwriter noticed a number of additional irregularities in the application that required further investigation. In that regard, he questioned why U. Cheema, rather than A. Cheema's wife, was the policy beneficiary, and why the beneficiary was paying the premiums rather than the insured, and finally, he questioned why the policy was for $200,000 when A. Cheema's income, according to Met Life's guidelines, did not qualify him for that large of a policy amount. Despite these discrepancies, the under-

writer decided the application was acceptable and issued the policy on January 18, 1993.

After the policy was issued, someone identifying himself as "Muhammad Cheema" called Met Life on five different occasions, purporting to be the insured and asking questions about possible coverage in the event of the insured's death. Met Life found these calls "strange enough" to send the case to the Consulting Services area, where the file was "noted." Nine days after the last of those calls was made to Met Life, the real A. Cheema was stabbed and beaten to death in his apartment. According to plaintiff, U. Cheema murdered the decedent in order to collect the life insurance benefits from the policy provided by Met Life.

Plaintiff filed a fourth amended complaint on February 19, 1999, alleging that Met Life negligently issued an insurance policy on the life of the decedent. Count IV of that complaint alleged that Met Life was negligent in the following ways: (1) issued a life insurance policy on the life of the decedent without investigating the veracity of the information on the insurance application and personally meeting with the insured; (2) issued a policy in favor of a beneficiary who did not possess an insurable interest on the life of the insured; (3) relied upon misrepresentations of its agent in underwriting the policy; (4) failed to warn decedent of the suspicious phone calls; and (5) provided motivation for the murder. Count V alleged gross negligence for the same acts. Count VI alleged negligent supervision of agent Sheik. The trial court granted Met Life's section 2—615 motion to dismiss these counts of the complaint.[1]

The appellate court reversed, finding that plaintiff

---

[1]Plaintiff's fourth amended complaint contained seven counts. Counts I through III involved allegations of negligence against other defendants and are apparently still pending in the circuit court. Count VII alleged that Met Life had "actual knowledge" of

could maintain a cause of action for negligent issuance of an insurance policy. In so doing, it looked to cases from other jurisdictions that have considered the matter and found that courts in those states have recognized the validity of such claims on three different grounds: (1) where the insurer should have known that the person who procured and owned the policy, and who was named as beneficiary, had no insurable interest in the life of the insured; (2) where the insurer had knowledge that the insured was unaware of and did not consent to the policy; and (3) where the insurer had actual knowledge of the beneficiary's intent to murder the insured and failed to take action. 333 Ill. App. 3d at 565.

As to the insurable interest ground, the appellate court noted that "while it has long been the established law of Illinois that the purchaser of an insurance policy must have an insurable interest in the insured's life [citation], it has also long been held that 'one may insure his own life for the benefit of another having no insurable interest therein [citation].' " 333 Ill. App. 3d at 568. The court then found that plaintiff's pleadings were insufficient because they failed to make this distinction—plaintiff did not allege that Met Life issued an insurance policy on the life of the decedent *to* an individual who did not possess an insurable interest, but, rather, that Met Life allowed the policy owner to designate a beneficiary who did not possess an insurable interest. Accordingly, the court concluded that plaintiff's allegations as they relate to an insurable interest were insufficient to state a cause of action. 333 Ill. App. 3d at 569.

---

the following: the person who took the paramedical exam was an imposter; U. Cheema was not the son of the decedent; and U. Cheema procured the policy with the intent to murder the decedent and collect the policy benefits. The circuit court granted summary judgment in favor of Met Life on count VII, and the appellate court affirmed. Plaintiff does not argue the propriety of this ruling before this court.

With respect to the second ground of possible recovery, however, the appellate court found that Met Life had a duty to ascertain, prior to the issuance of a policy on the life of another, whether the individual named as the insured is aware of and has consented to the procurement of the policy. The court found that the various irregularities in the application process, combined with the suspicious phone calls, were sufficient to put the insurer on notice that an investigation was warranted. 333 Ill. App. 3d at 580. The court then rejected the notion that actual knowledge was necessary to establish liability on the part of the insured. 333 Ill. App. 3d at 578-79.

## ANALYSIS

As noted above, the circuit court dismissed plaintiff's complaint after Met Life brought a section 2—615 motion to dismiss. A section 2—615 motion to dismiss challenges the legal sufficiency of the complaint. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003). In reviewing a section 2—615 dismissal, a reviewing court must decide whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *People ex rel. Ryan v. Telemarketing Associates, Inc.*, 198 Ill. 2d 345, 351 (2001). A cause of action should be dismissed only if it is clearly apparent from the pleadings that no set of facts can be proven which will entitle the plaintiff to recovery. *Chandler*, 207 Ill. 2d at 349. Review of a section 2—615 dismissal is conducted *de novo*. *Telemarketing Associates, Inc.*, 198 Ill. 2d at 351; *Chandler*, 207 Ill. 2d at 349.

To recover in a negligence action, a plaintiff must allege facts from which a court will find a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Chandler*, 207 Ill. 2d at 340, 349. The existence of a duty depends on whether the plaintiff and the defendant stood

in such a relationship to each other that the law will impose upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). Whether a duty of care exists is a question of law to be determined by the court. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6 (1991). However, the question of whether defendant breached its duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide. *Chandler*, 207 Ill. 2d at 340; *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993).

As the appellate court correctly noted, courts in other jurisdictions have recognized a cause of action for negligent issuance or continuation of a life insurance policy in three situations: (1) where the beneficiary who procured the insurance lacks an insurable interest (*Liberty National Life Insurance Co. v. Weldon*, 267 Ala. 171, 100 So. 2d 696 (1957)); (2) where there is a lack of knowledge and consent to the policy by the insured (*Ramey v. Carolina Life Insurance Co.*, 244 S.C. 16, 135 S.E.2d 362 (1964); *Williams v. John Hancock Mutual Life Insurance Co.*, 718 S.W.2d 611 (Mo. Ct. App. 1986); *Wren v. New York Life Insurance Co.*, 59 F.R.D. 484 (N.D. Ga. 1973), *aff'd*, 493 F.2d 839 (5th Cir. 1974)); and (3) where the insurer has actual notice of a plot by the beneficiary to murder the insured (*Bodine v. Federal Kemper Life Assurance Co.*, 912 F.2d 1373 (11th Cir. 1990); *Bacon v. Federal Kemper Life Insurance Co.*, 400 Mass. 850, 512 N.E.2d 941 (1987); *Life Insurance Co. of Georgia v. Lopez*, 443 So. 2d 947 (Fla. 1983)). Because plaintiff does not challenge the appellate court's ruling that the allegations of plaintiff's fourth amended complaint failed to state a cause of action under the first and third grounds noted above, we will limit our analysis to the second ground—whether plaintiff stated a cause of

action based on the decedent's lack of knowledge and consent to the policy.

The leading case on point is *Ramey v. Carolina Life Insurance Co.*, 244 S.C. 16, 135 S.E.2d 362 (1964). There, the South Carolina Supreme Court recognized a cause of action for negligent issuance of a life insurance policy based on the lack of knowledge and consent of the insured. In *Ramey*, the wife procured the policy on the life of her husband without his consent, forged his signature on the application, and named herself beneficiary. After surviving his wife's attempt to murder him by poisoning, the husband brought an action against the insurer for the personal injuries he sustained, contending that issuance of the policy proximately caused his wife to poison him with the hope of collecting the proceeds of the policy. The insurer knew that the husband was unaware of the policy and that the signature was a forgery. The court noted that generally a wife has an insurable interest, but nevertheless concluded that even with an insurable interest, insurance taken out on the life of another, without consent, is against public policy. *Ramey*, 244 S.C. at 22, 135 S.E.2d at 365, citing *Hack v. Metz*, 173 S.C. 413, 418, 176 S.E. 314, 316 (1934); *Holloman v. Life Insurance Co. of Virginia*, 192 S.C. 454, 7 S.E.2d 169 (1940) (the authorities are generally to the effect that, except in the case of an infant, a policy of life insurance taken out without the knowledge and consent of the insured is not enforceable); 29 Am. Jur. *Insurance* § 231, at 617 (1960) ("[a] wife, for example, cannot be permitted to obtain insurance on the life of her husband without his knowledge and consent; such a practice it has been deemed, might be a fruitful source of crime"). The *Ramey* court concluded by holding that "an insurance company has a duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary *** without the knowledge or consent of the insured, and

this would especially be true, where as here, the company knew or had reason to know that such was the situation." *Ramey*, 244 S.C. at 25, 135 S.E.2d at 366.

In reaching its holding, *Ramey* relied upon *Liberty National Life Insurance Co. v. Weldon*, 267 Ala. 171, 100 So. 2d 696 (1957). There, an aunt obtained life insurance on her two-year-old niece and then poisoned the child to death. The father of the child filed suit against the insurer, alleging that the company "knew or should have known" that the aunt had no insurable interest, and the company failed to exercise reasonable diligence to ascertain whether an insurable interest existed. *Weldon*, 267 Ala. at 178-82, 100 So. 2d at 700-04. In finding that a duty existed, the Alabama Supreme Court noted that the rule against issuing policies on the life of a person without his knowledge and consent is designed to protect human life. It stated that an insured is placed in a position of extreme danger where a policy of insurance is issued in favor of a beneficiary with no insurable interest. Given that such policies are unreasonably dangerous because of the risk of murder, the court held that "it would be an anomaly to hold that insurance companies have no duty to use reasonable care not to create a situation which may prove to be a stimulus for murder." *Weldon*, 267 Ala. at 186, 100 So. 2d at 708.

The holdings in *Ramey* and *Weldon* were followed by the Missouri Appellate Court in *Williams v. John Hancock Mutual Life Insurance Co.*, 718 S.W.2d 611 (Mo. Ct. App. 1986). There, an agent of the insurance company, who was an acquaintance of the plaintiff, submitted an application to the insurer on the life of the plaintiff without the plaintiff's knowledge or consent. The insurance company's internal protocol required that an agent witness the signing of an insurance application. The named beneficiary was originally plaintiff's wife, but was later changed to a friend of the agent. Thereafter,

plaintiff was shot, but not killed. The plaintiff sued, contending that the insurance company failed to make any direct contact with him about the policy. The appellate court found that the plaintiff could maintain his suit for negligent issuance of the policy. Specifically, the court held as follows:

"The negligent issuance of a life insurance policy is unlikely to lead to an attempt on the insured's life. However, murder is such a serious crime that [it] is against public policy not to discourage any act which even marginally increases the risk that a murder will be attempted. We therefore refuse to hold that an insurance company has no liability if it negligently issues an insurance policy which acts as an incentive for a murder or attempted murder. The increased risk caused by the negligent issuance of life insurance may be slight, but it is certainly foreseeable. Our decision in this regard is in accord with the decisions of other states which have dealt with this issue." *Williams*, 718 S.W.2d at 613.

Similarly, in *Bacon v. Federal Kemper Life Insurance Co.*, 400 Mass. 850, 512 N.E.2d 941 (1987), the decedent's business partner forged a change of beneficiary form and then murdered the decedent. The court found that a duty existed, but the evidence was insufficient to establish a breach of duty. The *Bacon* court explained the scope of the duty owed:

"The only duty that the law imposes on an insurance company to protect its insured is that the company take reasonable steps to determine whether the insured has consented to the policy or the change of beneficiary. In the cases in which an insurance company has been found liable for harm to its insureds, the company either had actual knowledge that the insured had not consented to the policy [citation], or should have known that the person who procured the policy did not have an insurable interest in the life of the insured." *Bacon*, 400 Mass. at 855, 512 N.E.2d at 944.

Additionally, a federal district court cited *Ramey* approvingly in *Wren v. New York Life Insurance Co.*, 59

F.R.D. 484 (N.D. Ga. 1973), *aff'd*, 493 F.2d 839 (5th Cir. 1974). In *Wren*, the plaintiff filled out an application for life insurance on her former husband. The application designated her as the beneficiary and bore the supposed signature of her former husband. It was undisputed, however, that the former husband did not sign the application. After the death of her former husband, plaintiff filed suit to collect the insurance proceeds, contending that she signed his name to the application with his knowledge and consent. The heirs of the deceased insured filed a motion to intervene, alleging a cause of action for negligent issuance of a policy. The heirs claimed that the insurance company issued the policy without the insured's knowledge and consent, naming the former wife as beneficiary, and that this "created a fruitful source of crime and a situation which might prove to be a stimulus for murder." *Wren*, 59 F.R.D. at 486. The heirs further alleged that the former wife did in fact kill the insured. The court essentially found that the heirs had alleged a legitimate tort claim, patterned after *Ramey*, but concluded that the heirs' claim should be brought in a separate action. *Wren*, 59 F.R.D. at 487.

Most recently, in *Vereen v. Liberty Life Insurance Co.*, 306 S.C. 423, 412 S.E.2d 425 (App. 1991), the court considered a negligent-issuance-of-insurance claim where the agent of the insurance company perpetrated a fraud on the company by filling out a life insurance application in the name of a person the agent had never met and then naming a fictitious beneficiary. The insurance company issued the policy, and the insured was later murdered by a man who had conspired with the insurance company agent to collect the policy proceeds. The appellate court affirmed a directed verdict in favor of the insurance company on the basis of agency law principles, finding that the insurance company employee was not acting within the scope of his employment in defrauding

the company. The court did, however, take the opportunity to reaffirm the holding of *Ramey*, noting that "[t]his case presents a classic, though tragic, illustration of why the law prohibits issuing policies on the life of a person without his knowledge or consent." *Vereen*, 306 S.C. at 427, 412 S.E.2d at 428, citing *Ramey*, 244 S.C. at 25, 135 S.E.2d at 366-67.

The foregoing cases provide ample and persuasive authority for concluding that an insurance company owes a duty of due care to advise a proposed insured of a life insurance policy taken out on his life. We believe that the appellate court correctly concluded that "an insurer may not, with impunity, provide coverage on someone's life without undertaking reasonable precautions to ascertain whether the insured is aware of and has consented to the issuance of the policy." 333 Ill. App. 3d at 578.

Our conclusion is supported by consideration of the traditional factors that are relevant to a court's imposition of a duty. To determine whether a duty exists under certain circumstances, a court must consider the following factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of guarding against the injury; (4) the consequences of placing that burden on the defendant. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303 (2000); *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 456 (1996). The question of the existence of a duty turns largely on public policy considerations. *Jones*, 191 Ill. 2d at 303.

Here, we believe that it is reasonably foreseeable that a policy taken out on someone's life without his knowledge or consent could lead to injury or death at the hands of the person who procured the policy, and that there is a sufficient likelihood of injury. As the *Ramey* court noted, it is well recognized that "a policy of insurance taken out on the life of another without his knowledge or consent is void and against public policy in that it might be a

fruitful source of crime." *Ramey*, 244 S.C. at 22, 135 S.E.2d at 365. The rule against issuing these kinds of policies is designed to protect human life, and policies issued in violation of the rule are not considered " 'dangerous because they are illegal[, but] they are illegal because they are dangerous.' " *Ramey*, 244 S.C. at 24, 135 S.E.2d at 366, quoting *Weldon*, 267 Ala. at 186, 100 So. 2d at 708.

The remaining factors of the duty analysis also favor placing a burden of due care on the insurance company under the circumstances of the present case. Such a burden would be a modest one compared to the potential for serious injury. When faced with various anomalies in the application process, an insurance company may be able to satisfy its duty of due care by simply refusing to issue the policy, or by postponing the decision to issue the policy and requiring more documentation from the proposed insured, or by undertaking some minimal background investigation. In some cases, the insurer may be able to meet its burden of care by following its own internal procedures, which are presumably designed to detect fraud in the application process. In reaching our conclusion that a duty of care existed in the present case, we make no determination as to whether Met Life's conduct amounted to a breach of that duty.

Met Life argues that the appellate court adopted the wrong standard of care when it concluded that Met Life had a duty to take reasonable precautions to determine whether the insured was aware of the policy. Met Life maintains that a plaintiff should not be able to state a cause of action for negligent underwriting unless he alleges that there is "actual knowledge" on the part of the insurance company that the policy application was somehow fraudulent. It claims that none of the cases cited by the appellate court support a "should have known" standard. Met Life asserts that in all of the cases

relied upon by the appellate court, including *Ramey*, the insurance companies possessed actual knowledge either that the application was fraudulent or that the insured's life was in jeopardy.

The standard of care, also known as the standard of conduct, falls within the duty element of the negligence analysis. *Jones*, 191 Ill. 2d at 294. As the *Jones* court explained, " '[w]hat the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.' " (Emphasis in original.) *Jones*, 191 Ill. 2d at 295, quoting W. Prosser, Torts, at 324 (4th ed. 1971). In an ordinary negligence case, the standard of care required of a defendant is to act as would an " ' "ordinarily careful person" ' or a ' "reasonably prudent" person.' " *Jones*, 191 Ill. 2d at 295, quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 22 (1996), quoting *Cunis v. Brennan*, 56 Ill. 2d 372, 376 (1974).

Met Life's assertion that actual knowledge is required must be rejected. It misconstrues the holding of *Ramey*. It happened to be the case in *Ramey* that the insurance company was aware that the insurance policy was obtained by the beneficiary and not by the insured. However, *Ramey* in no way held that actual knowledge was a prerequisite for maintaining a cause of action. Instead, *Ramey* applied a reasonable care standard and simply concluded that the duty was underscored by actual knowledge on the part of the insurance company: "an insurance company has a duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary *** without the knowledge or consent of the insured, *and this would especially be true, where as here, the company knew or had reason to know that such was the situation.*" (Emphasis added.) *Ramey*, 244 S.C. at 25, 135 S.E.2d at 366.

As the appellate court correctly noted,

"Whether based upon actual knowledge or whether the insurer is held to a reasonable duty of inquiry, its liability

would still be predicated upon a negligence theory. \*\*\* [T]he insurer [has not] provided any basis that would permit this court to limit the liability of the insurer to willful negligence alone. Such actual knowledge would merely heighten the element of foreseeability, which could then be considered by the fact finder. To draw the line at actual knowledge rather than what the insurer reasonably should have known would be an arbitrary compartmentalization, legislative in nature." 333 Ill. App. 3d at 579.

As noted above, plaintiff's fourth amended complaint alleged that Met Life issued the insurance policy based on an application process that did not follow its own internal rules, which required that the agent meet with the proposed insured for part A of the application. It further alleged that the application was in fact completed by someone other than the insured, who claimed to be related. Additionally, the complaint alleged negligence on the part of Met Life in issuing the policy in the face of a number of peculiar circumstances: the beneficiary was paying the policy premiums, the policy was written for a larger amount than normally allowed for the proposed insured's income, and the named beneficiary was the proposed insured's son, not his wife. The complaint and exhibits attached thereto also indicate discrepancies between part A of the application and the medical screening portion, as well as a number of suspicious phone calls shortly after the policy was issued. Viewing all of these facts cumulatively and in the light most favorable to plaintiff, we believe that plaintiff has alleged sufficient facts so as to survive a motion to dismiss the complaint for failure to state a cause of action under section 2—615 of the Code.

Met Life next argues that even if the appellate court set the correct standard of care, it misapplied that standard by failing to consider the general rule that if there is an inconsistency between an allegation of a complaint and a fact as shown in an exhibit attached to the complaint, the exhibit controls and the fact alleged in

the complaint is not admitted as true for purposes of a section 2—615 motion to dismiss. Met Life argues that the insurance application is attached as an exhibit and it shows that while A. Cheema may not have met with the Met Life agent during the initial application process, Met Life's paramedical examiner did meet with A. Cheema for the medical portion of the application and certified that A. Cheema did sign the application and did attend the paramedical examination. Therefore, Met Life continues, A. Cheema must have known about the policy.

In *Garrison v. Choh*, 308 Ill. App. 3d 48, 53 (1999), the appellate court set forth the principles governing when a fact revealed in an exhibit attached to a complaint will control over an inconsistent allegation of the complaint. The court stated as follows:

"Section 2—606 of the Code requires that a written instrument upon which a claim or defense is founded must be attached to the pleading as an exhibit or recited therein. If the instrument is attached to the pleading as an exhibit, it constitutes part of the pleading for purposes of ruling on motions relating to the pleadings and for purposes of determining what issues have been raised for trial. 735 ILCS 5/2—606 (West 1996). See *F.H. Prince & Co. v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 797, 656 N.E.2d 142, 146 (1995); *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 724, 617 N.E.2d 1211, 1217 (1993); 3 R. Michael, Illinois Practice § 23.9, at 332-33 (1989). The exhibits to which section 2—606 applies generally consist of instruments being sued upon, such as contracts or agreements. See, *e.g.*, *Farm Credit Bank v. Biethman*, 262 Ill. App. 3d 614, 634 N.E.2d 1312 (1994) (promissory note and deed of trust); *F.H. Prince & Co.*, 275 Ill. App. 3d 792, 656 N.E.2d 142 (settlement agreement, promissory note and guaranty); *McCormick v. McCormick*, 118 Ill. App. 3d 455, 455 N.E.2d 103 (1983) (trust instrument). For more extensive listing of the types of agreements upon which the claim was founded, see *Fowley v. Braden*, 4 Ill. 2d 355, 359, 122 N.E.2d 559, 562 (1954). In the case of a conflict between such written exhibits and the allegations of a

pleading, the exhibits control. *E.g., F.H. Prince & Co.*, 275 Ill. App. 3d at 797, 656 N.E.2d at 146.

While the obligation of section 2—606 to attach a written instrument to the complaint is limited to documents on which a claim or defense is based, a party is not prohibited from attaching any written document to the complaint. See generally 3 R. Michael, Illinois Practice § 23.9, at 332 (1989). Any document attached to the pleading will be treated as part of the pleading if the pleading specifically incorporates it by reference. 'To incorporate a document as an exhibit, the pleading must refer to a specifically identified instrument and must clearly manifest an intent to incorporate it as a part of that pleading.' 3 R. Michael, Illinois Practice § 23.9, at 331-32 (1989). See *Wolford v. Household Finance Corp.*, 105 Ill. App. 3d 1102, 1105, 435 N.E.2d 528, 530 (1982); *Camp Creek Duck Farm, Inc. v. Shell Oil Co.*, 103 Ill. App. 3d 81, 86, 430 N.E.2d 385, 388 (1981). When the exhibit is not an instrument upon which the claim or defense is founded but, rather, is merely evidence supporting the pleader's allegations, the rule that the exhibit controls over conflicting averments in the pleading is inapplicable. See, *e.g., In re Estate of Davis*, 225 Ill. App. 3d 998, 1003 (1992) (the court need not accept as true the facts set forth in exhibits upon which the complaint is not founded); *McCormick*, 118 Ill. App. 3d at 460-61, 455 N.E.2d at 108-09 (finding exhibits totaling 150 pages were not conclusive because they were not instruments upon which the claim was based); see also 3 R. Michael, Illinois Practice § 23.9, at 334 (1989)." *Garrison*, 308 Ill. App. 3d at 53-54.

In the present case, it is unnecessary for us to decide whether the insurance application attached to plaintiff's complaint was an exhibit upon which plaintiff's claim was founded because the exhibit is clearly not inconsistent with the complaint. Plaintiff's fourth amended complaint essentially alleges that Met Life's insurance agent did not personally meet with the insured, but instead falsely stated that he had met with the insured and asked the required questions. It is also clearly inferred from plaintiff's complaint that the person ap-

pearing for the medical exam was an imposter. The attached medical exam portion of the application merely indicates that the paramedical examiner certified that *someone he believed to be named A. Cheema* appeared for the exam. Thus, there is no inconsistency between the complaint and the exhibit.

Met Life additionally argues that plaintiff, as the administrator of decedent's estate, took an inconsistent position in a related probate action by attempting to collect the policy proceeds. Specifically, Met Life maintains that plaintiff claimed in probate court that A. Cheema did sign the insurance application. Accordingly, it contends, plaintiff should be collaterally estopped from arguing anything contrary here.

We find no merit to Met Life's argument. The minimum requirements for application of collateral estoppel have been stated as follows: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication. *American Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000). Collateral estoppel is an equitable doctrine; thus, even where the threshold requirements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 391 (2001).

We find that the doctrine is not applicable under the facts of this case. Met Life is attempting to use the doctrine defensively, that is, it seeks to prevent plaintiff from asserting a claim plaintiff had previously litigated and lost. See *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). The problem with Met Life's collateral estoppel

argument is that the adjudication in the prior probate proceeding was *consistent with* the position plaintiff takes here. Met Life itself, in effect, took the position in the probate proceeding that plaintiff now advocates—that A. Cheema did not sign the application. In the probate proceeding, Met Life submitted a motion pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216), requesting that plaintiff admit that A. Cheema did not sign the application and this fact was eventually deemed admitted pursuant to the motion. The claim plaintiff now asserts in the instant proceeding is that the real A. Cheema did not sign the application. This is consistent with the outcome of the probate proceeding. Accordingly, collateral estoppel does not apply to plaintiff's present claim.

Met Life further argues that the appellate court erred in failing to give proper weight to Met Life's contention that an identification card was presented by A. Cheema at the medical exam. Met Life urges that regardless of what the standard of care might be, when an insurance company uses a state-issued identification card to verify the identity of the person it is intending to insure, the insurer has satisfied its duty of care.

In essence, Met Life is advocating that, as a matter of law, simple verification of a state identification relieves it of any duty to investigate further and trumps the following anomalies known to Met Life: (1) discrepancies between the application and the medical exam existed; (2) the son, not the wife, was the beneficiary; (3) the proposed insured was not present for the meeting with the agent to sign part A of the application; (4) someone claiming to be the son, not the insured, procured the policy; (5) the amount of coverage was in excess of the guidelines; and (6) Met Life received a number of suspicious phone calls following issuance of the policy. The problem with Met Life's argument is that procedurally this case is before this court on a section 2—615 motion

to dismiss, which tests the legal sufficiency of plaintiff's complaint (*Chandler*, 207 Ill. 2d at 348). None of the allegations of plaintiff's fourth amended complaint mention any reliance on the state identification card, nor is reliance on the identification card mentioned in any of plaintiff's exhibits. Thus, the matter has no bearing on whether plaintiff stated a cause of action. We further observe that the question of Met Life's reliance on the identification card—in the face of the anomalies in the application process and the subsequent suspicious phone calls—is germane to the question of whether Met Life breached the standard of care by issuing the policy and continuing it until the decedent's death. This is a quintessential question of fact to be resolved by the trier of fact. *Chandler*, 207 Ill. 2d at 340; *Thompson*, 154 Ill. 2d at 382.

We now turn to plaintiff's request for cross-relief. Plaintiff asks that we reverse the trial court's dismissal with prejudice of the portion of plaintiff's fourth amended complaint that alleged that the policy was negligently issued because the beneficiary had no insurable interest. As we have explained, the plaintiff's allegations were insufficient because they failed to allege that Met Life issued an insurance policy on the life of the decedent *to* an individual who did not possess an insurable interest. Plaintiff acknowledges that the allegations of the complaint were insufficient in this regard, but requests leave to amend his complaint on remand to properly plead a duty based on Met Life's failure to ensure that *the procurer* of the policy retained an insurable interest.

The general rule is that where a trial court dismisses a complaint and plaintiff does not seek leave to amend, the cause of action must stand or fall on the sufficiency of the stricken pleading. *Teter v. Clemens*, 112 Ill. 2d 252, 260-61 (1986); *Stamp v. Touche Ross & Co.*, 263 Ill. App. 3d 1010, 1018-19 (1993). In the interest of judicial

economy and to prevent a plaintiff from circumventing the rule against interlocutory appeals, a party should not ordinarily be permitted to stand on his pleadings before the trial court and then seek leave to amend in the appellate court after the dismissal of the trial court is affirmed. See *Stamp*, 263 Ill. App. 3d at 1019. However, this general rule is not without exception, and in certain cases a reviewing court may properly allow a plaintiff the opportunity to amend pleadings on remand. See, *e.g.*, *Miller v. Gupta*, 174 Ill. 2d 120, 128-29 (1996) (the appellate court properly allowed plaintiff the opportunity to amend a negligence count where this court decided a case that favorably affected the potential count while the case was pending before the appellate court). Thus, where the invalidity of plaintiff's legal theory is determined for the first time in the reviewing court, and where it would have been futile to request amendment in the trial court, a court of review may allow the plaintiff the opportunity to amend the complaint to cure the defect on remand in spite of the failure to seek leave to amend in the first instance in the trial court. See *Stamp*, 263 Ill. App. 3d at 1021; *Johnson v. Lincoln Christian College*, 150 Ill. App. 3d 733, 749 (1986).

Here the exception to the general rule clearly applies, and we will therefore allow amendment on remand. The trial court dismissed plaintiff's fourth amended complaint on the basis that an allegation of "actual knowledge" on the part of the insurance company was a prerequisite for maintaining a cause of action in this case. The trial court further ruled that the insurer's knowledge must include not only knowledge of the plan to obtain the insurance policy by fraudulent means, but also knowledge of the plan to murder the reputed insured. In other words, under the trial court's narrow view of the case, plaintiff could only maintain a cause of action if he alleged that the insurance company had actual knowledge of the plot

to murder the decedent. Thus, any attempt by plaintiff to request leave to amend his fourth amended complaint to allege that *the procurer* of the policy lacked an insurable interest would have been futile. This is made clear by the colloquy that took place between the trial court and plaintiff's counsel at the hearing on plaintiff's motion to reconsider the section 2—615 dismissal:

"MR. WISE: *** My understanding and my reading of the law is that Defendant has a duty not to issue a life insurance policy to a person who has no insurable interest unless the insured is told a policy has issued on his life.

My understanding of the law is that the issuance of a life insurance policy with no insurable interest without telling the insured is motive for murder. That's foreseeability. *** Now whether they exercised due care to learn whether or not the purchaser had an insurable interest is a question of fact. ***

THE COURT: *** [W]hen did the Defendant learn that a fraud had been perpetrated upon it?

MR. WISE: That's unclear. I don't think its relevant.

THE COURT: The knowledge of the corporation at the time it issued the policy is relevant under Illinois law. ***

MR. WISE: Are we in agreement, or are we not, an understanding of the law that Met Life has responsibility not to issue a life insurance policy to a person without an insurable interest?

THE COURT: It was never decided by this court because that was never the issue.

\* \* \*

MR. WISE: The question of whether the Court— whether the insurance company can be liable when a third party murders someone is a question of intervening cause, which is way down the line. Right? I mean *** if they have breached their duty ***, then their defense may later be well the murder was an intervening cause, but that's a step further down the line.

I am concerned because when I read your opinion that there has to be actual knowledge by the insurance company, what is the actual knowledge the court believes is required

in order for liability to attach to the insurance company?
Actual knowledge of the fact that the person purchasing
the insurance policy does not have an insurable interest?
Or actual knowledge that the insured has not been
informed that there is a policy on his life?

\* \* \*

THE COURT: You will notice that Illinois is silent on
this.

\* \* \*

MR. WISE: Illinois law, it's a negligent [sic] case; duty
breach, causation. Now it hasn't been specifically applied
in Illinois where a company has sold a policy to a person
without an insurable interest, and I understand that. The
question is whether or not negligence and a duty to act
with due care for everyone falls into these circumstances,
and I think that the Alabama case says that it does.

And those cases which this court cited to where there is
actual knowledge, I don't think anyone has discussed
whether that is a condition precedent to liability, or
whether it is evidence that was present in those cases
without which there would be no recovery."

The trial court then denied plaintiff's motion to
reconsider. From the preceding account, it is apparent
that counsel *did* argue before the trial court that a cause
of action could be alleged based on Met Life's negligent
issuance of a life insurance policy *to a person without an
insurable interest*, where plaintiff had alleged facts from
which it could be concluded that the insurer reasonably
should have known that *the procurer* of the policy lacked
an insurable interest. It is also apparent from the trial
court's comments that it dismissed plaintiff's insurable-
interest claim solely for failure to properly allege "actual
knowledge" on the part of the insurance company. Thus,
a request for leave to amend the complaint to more art-
fully allege a lack of an insurable interest by the *procurer*
of the policy would have been futile. The trial court's
dismissal based on its belief that actual knowledge was

required has now been reversed on review. Accordingly, we find that plaintiff is entitled to amend his complaint on remand as he has requested.

## CONCLUSION

For the foregoing reasons, we conclude that plaintiff's fourth amended complaint sufficiently alleges a cause of action for negligent issuance of a life insurance policy based on the proposed insured's lack of knowledge and consent to the policy. We further conclude that on remand, plaintiff may amend his pleadings to properly plead a cause of action based on a lack of an insurable interest. Accordingly, we affirm the judgment of the appellate court as modified.

*Appellate court judgment affirmed as modified.*

JUSTICE FITZGERALD took no part in the consideration or decision of this case.