Ila MINSON, Plaintiff–Appellant,

v.

VILLAGE OF HOPEDALE, et al., Defendants–Appellees.

No. 03–3507.

United States Court of Appeals, Seventh Circuit.

Submitted June 17, 2004.*

Decided June 17, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Ila Minson, Hopedale, IL, pro se.

Jason Rose, Hervas, Sotos, Condon & Bersani, Itasca, IL, for Defendants–Appellees.

Before DIANE P. WOOD, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Ila Minson was charged with aggravated assault and unlawful use of a weapon after quarreling with a Hopedale, Illinois, police officer. Before waiting for the state criminal proceedings to run their course, however, Minson sued in federal court under 42 U.S.C. § 1983, alleging that the officer and other Hopedale officials violated her constitutional rights by searching her car without probable cause and engaging in a baseless arrest to silence her political speech. The district court dismissed, reasoning that only Minson's search and seizure claims were conceivably viable, and that they were now collaterally estopped by her intervening conviction on the aggravated assault charge. We affirm the dismissal but, because we disagree with the court's estoppel analysis, modify the judgment to be without prejudice as to the Fourth Amendment claims.

Both Minson and the defendant police officers testified to their version of events at Minson's state criminal trial. One of the officers testified that he responded to a dispatch requesting assistance for a vehicle in a ditch in the area of Minson's property. According to the officer, he was returning to his squad car after examining an unoccupied pickup truck that matched the description in the dispatch when Minson charged him screaming profanities and wielding a roofing hammer with a hatchet blade. The officer three times ordered Minson to drop the roofing hammer and eventually threatened to shoot her, at which point she threw the hammer into her husband's nearby car. The officer told Minson she was under arrest, but she took off running for her house. Another officer then arrived on the scene and directed the first officer to retrieve the hammer from the car as evidence. When he did so, Minson, who had emerged from her home holding a video camera, tried to slam the car door on him. Both officers testified that Minson eventually became more subdued and that they were able to arrest her.

Minson's account of the arrest at her state trial was quite different. She testified that she was chiseling snow off of her truck with a pickaxe when the officer arrived on her property. Feeling "agitated" because she was having trouble with the truck and because the officer had "no business being there," Minson argued with him. Although she had many tools with her while she worked on the truck, the roofing hammer was not one of them; she had left it in her husband's car two days earlier. As for the object she was allegedly threatening the officer with, Minson guessed that he might have seen one of her gloves in her hand. After arguing with Minson, the officer pulled the roofing hammer from her husband's car and fabricated the story that she had threatened him with it. Minson also maintained in state court that the search of the car was unconstitutional because the officer was outside of his jurisdiction and did not have a search warrant; she claimed that the agreement between Hopedale Township and the Village of Hopedale extending the jurisdiction of the village police to the entire township was not valid. Minson's motion to suppress the roofing hammer was denied.

In her Second Amended Complaint in the federal lawsuit, Minson alleged facts substantially similar to her state trial testimony. She claimed that the agreement giving the village police jurisdiction in the county deprived her of due process and equal protection, that the search of the car and the arrest were not supported by probable cause and thus invalid under the Fourth Amendment, that the policing agreement between the village and the township and all of the events that followed it were steps in a preconceived plan to retaliate against her for exercising her First Amendment rights, and that the slow pace of the state criminal case had violated her Sixth Amendment right to a speedy trial.

On appeal Minson focuses solely on her Fourth Amendment claims, arguing that the district court erred in determining that her vigorous challenge to the search and arrest in state court barred her from relitigating the same issues in her federal suit. Minson contends that, at the time the district court ruled, her assault conviction was not "final" for collateral estoppel purposes because her state-court appeal was (and still is) pending. Therefore, she insists, the state trial court's resolution of her Fourth Amendment claims did not preclude her identical claims in federal court.

Although the defendants cite us cases discussing the preclusive effect of prior federal judgments in a federal court, we instead must look to Illinois law to determine the preclusive effect to be given to an Illinois judgment. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir.2002). Typically, Illinois courts will not revisit identical issues from a prior suit that ended in a "final" judgment on the merits if the party sought to be estopped was a party or in privity with a party to the prior litigation. *Bajwa v. Metro. Life Ins. Co.*, 208 Ill.2d 414, 281 Ill.Dec. 554, 804 N.E.2d 519, 532 (2004). The Supreme Court of Illinois has held that "[f]or purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted." *Ballweg v. City of Springfield*, 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373, 1375 (1986). Although we note that the Illinois appellate courts have differed in their adherence to this rule, *compare Illinois Founders Ins. Co. v. Guidish*, 248 Ill.App.3d 116, 187 Ill.Dec. 845, 618 N.E.2d 436, 440 (1993) *with People v. One 1984 Pontiac Parisienne Sedan*, 323 Ill.App.3d 717, 257 Ill. Dec. 700, 754 N.E.2d 358, 362 (2001), we

are bound by the state supreme court's opinion, *see MindGames, Inc. v. Western Pub. Co., Inc.,* 218 F.3d 652, 655 (7th Cir. 2000). Because Minson had not yet exhausted her appellate remedies in Illinois, the Illinois trial court's judgment was not "final" and so its resolution of the Fourth Amendment claim should not have been given preclusive effect by the district court.

 We do believe, however, that Minson's claims of an illegal search and an improper arrest would necessarily undermine the validity of her conviction, and are therefore barred until she succeeds in having that conviction overturned. *See Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Case v. Milewski,* 327 F.3d 564, 568–69 (7th Cir. 2003). If, as Minson alleges, she was arrested and prosecuted solely on the basis of a police officer's fabricated statement that she ran at him wielding a roofing hammer, any attack on the arrest would necessarily challenge the legality of a prosecution premised on the false account. *See Wiley v. City of Chicago,* 361 F.3d 994, 997 (7th Cir.2004). Similarly, Minson's claim that the search of her car was illegal must be barred because her only argument against the existence of probable cause is her assertion that the incident that supported both the search and her conviction did not occur. *See Okoro v. Callaghan,* 324 F.3d 488, 489–90 (7th Cir.2003). Minson asserts that the officer did not have probable cause to search because he never in fact saw her wielding the roofing hammer as he claimed; if this is the case, then not only the search but also Minson's state conviction would be invalid. As long as that conviction stands, Minson's claims under the Fourth Amendment are premature. However, we note that a dismissal under *Heck,* unlike the district court's dismissal based on collateral estoppel, is not a dismissal on the merits. *See Alejo v. Heller,* 328 F.3d 930, 937 (7th Cir.2003). Accordingly, we modify the district court's judgment so that the dismissal of the Fourth Amendment claims is without prejudice.

AFFIRMED as MODIFIED.